UNITED STATES COURTS
SOUTHERN DISTRICT OF TEXAS
FILED

MAY 0 2 2002

Michael N. Milby, Clerk of Court

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| KIMBERLY McINTOSH, | § | |
| Plaintiff, | § | |
| | § | |
| | § | CIVIL ACTION NO. V-02-43 |
| vs. | § | |
| | § | |
| | § | |
| LABOR READY, INC. | § | |
| Defendant. | § | |
| | § | |

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

Plaintiff KIMBERLY McINTOSH complains of Defendant LABOR READY, INC. as follows:

1. This is a proceeding for declaratory and injunctive relief and for money damages against Defendant Labor Ready, Inc. ("Labor Ready") to redress the deprivation of rights secured to the plaintiff by Title VII of the Civil Rights Act of 1964 [42 U.S.C. § 2000e *et seq.*] (gender discrimination and retaliation); and for state law claims pertaining to intentional infliction of emotional distress, defamation per se, and for negligent hiring, training, supervision, and retention.

## PARTIES

2. Plaintiff Kimberly McIntosh is a Caucasian Female and a citizen of the United States. Plaintiff McIntosh was employed by Defendant from September 16, 2000 until March 8, 2001.

3. Upon information and belief, Defendant Labor Ready is a corporation doing business in the State of Texas. Defendant Labor Ready may be served with summons by serving its general counsel Ron Junck, Esq., 1015 A Street, Tacoma, Washington 98402. At all times relevant in this

**Original Complaint**
**Page 1**

complaint, Defendant is an employer as that term is defined by 42 U.S.C. § 2000e(b), is engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 2000e(h), and the offending facility is located within the boundaries of the Southern District of Texas. The unlawful employment practices alleged below were committed by the Defendant in the Southern District of Texas, Victoria Division.

## JURISDICTION

4. Jurisdiction is conferred on this Court pursuant to Title VII of the 1964 Civil Rights Act [42 U.S.C. § 2000e]. This Court has jurisdiction over the state claims under the doctrine of pendent jurisdiction.

## FACTUAL ALLEGATIONS

5. The Defendant engaged in a pattern and practice that discriminated against Plaintiff in employment opportunities on account of her gender. Defendant also retaliated against Plaintiff and terminated her shortly after she reported the harassment and hostile work environment to her upper management, which violates Section 703(b) of Title VII of the 1964 Civil Rights Act [42 U.S.C. §2000e].

6. Plaintiff was employed by Defendant from September 16, 2000 until her termination on or about March 8, 2001.

7. Plaintiff was sexually harassed, endured discrimination, and was retaliated against for reporting said conduct committed by her immediate supervisor in Victoria, Texas.

8. In addition, Plaintiff McIntosh contends that Messrs. Trevino and Alan Charley (Defendant's Senior District Manager and Area Supervisor respectively) discriminated and retaliated against her by refusing to rectify the situation once they were made aware of it (and pursuant to

**Original Complaint**
**Page 2**

Defendant's written policy against said conduct below alleged).

9. Finally, Plaintiff McIntosh is of the information and belief that she was terminated in retaliation for reporting said conduct below to Defendant through its Area Supervisor and District Manager and pursuant to her former company's articulated policies and procedures for reporting said allegations of sexual harassment, hostile workplace, and gender discrimination.

10. Although Plaintiff found her supervisor incredibly difficult to work with, Plaintiff endured a hostile workplace throughout her employment under her immediate supervisor (and for Defendant) because she was a single mother and needed a job, as well as she loved her work and found it rewarding, despite the on-going harassment and discrimination. Plaintiff McIntosh performed exceptionally well in her position with Defendant, both according to her revenue figures, as well as in an evaluation given to Plaintiff by Defendant's Area Supervisor a ten days before her termination.

11. On or about February 25, 2001, Plaintiff's immediate supervisor began to interrogate the laborers at her branch, indicating that she was investigating allegations of inappropriate sexual relationships between Plaintiff McIntosh and the laborers. Plaintiff's immediate supervisor knew that her allegations against Plaintiff were false when made and published solely out of jealousy when fabricated to third parties. Specifically, Plaintiff's supervisor questioned laborers by asking if they had sex and/or knew someone who had sexual relations with Plaintiff McIntosh. Plaintiff's immediate supervisor asked the laborers things, such as: "Who is Kim f**king?" and "Find out who Kim is f**king and report it to me." (Explicatives edited). The following day, many of the laborers reported the above interrogation to Plaintiff McIntosh.

12. Plaintiff reported her immediate supervisor's conduct pursuant to Defendant Labor

**Original Complaint**
**Page 3**

Ready's sexual harassment policy to Defendant's Area Supervisor on or about February 26, 2001. Plaintiff McIntosh was told by her Area Supervisor to call her immediate supervisor into the office in order for him to have a telephone conference with both of them. During this telephone conference, Defendant's Area Supervisor told Plaintiff's immediate supervisor that she had violated Plaintiff McIntosh's civil rights and that she needed to stop spreading rumors about Plaintiff's chaste to others, because she knew that the allegations were untrue.

13. On or about February 27, 2001, additional allegations of Plaintiff McIntosh's chaste surfaced and were reported to Plaintiff McIntosh by laborers, co-employees, and clientele. On or about February 28, 2001, a personal friend of Plaintiff McIntosh informed her before church services that Defendant's immediate supervisor had told him Plaintiff McIntosh was having sexual relationships with the laborers. Humiliated and sickened, Plaintiff McIntosh contacted Defendant's Senior District Manager (Mr. Louis Trevino) about the rumors running amok in the community. Plaintiff McIntosh was told not to report to work on March 1, 2001, so that Defendant's Trevino could take care of the situation. On or about March 1, 2001, Plaintiff McIntosh met with Messrs. Trevino and Charley (Defendant's Area Supervisor above) and was told by Mr. Trevino that the matter was resolved. However, when Plaintiff McIntosh asked how Defendant's Trevino resolved the matter, he stated that he could not tell her. Upon Messrs. Trevino and Charley's departure, Defendant's immediate supervisor approached Plaintiff McIntosh and informed her that she had not clocked in, and if she forgot again, she would be written up and terminated.

14. On or about March 5, 2001, Defendant's immediate supervisor called Plaintiff McIntosh into her office and began to reprimand her job performance for duties that she was not aware existed. When Plaintiff McIntosh left her immediate supervisor's office, she paged Defendant's Area

**Original Complaint**
**Page 4**

Supervisor and after another conference call, Plaintiff was told by Defendant's Area Supervisor to take the day off. During the conference with her supervisors, Plaintiff pointed out that she felt she was being retaliated against by her immediate supervisor for making a complaint against her. Plaintiff asked Defendant's supervisors how much longer she would have to endure her immediate supervisor's retaliatory behavior and what was he going to be done to remedy the situation. Plaintiff was again told by Defendant's supervisor Trevino to: "Go home, not worry about it, and that he would take care of it."

15. On or about March 6, 2001, Plaintiff reported to work and Plaintiff's immediate supervisor informed Plaintiff that she was suspended with pay for two days.

16. On or about March 8, 2001, Plaintiff McIntosh was called into her immediate supervisor's office and told that she was terminated. Plaintiff was handed a letter of termination written by Defendant's Trevino and Charley, which indicated that she was being terminated for work related misconduct. Worth noting is that Plaintiff McIntosh was never written-up (or had no notice of being written up) at any time during her employment, as well as was told by Defendant's Charley a few weeks before her termination that she would be getting a raise because of her excellent work performance.

17. Defendant Charley's assessment of Plaintiff McIntosh a few weeks earlier is completely inconsistent with the letter of termination issued by Defendant's Senior District Manager Trevino. Interestingly, when Defendant's Charley told Plaintiff she was going to get a raise, it was vigorously opposed by Plaintiff's immediate supervisor (and alleged harasser) and said objections to Plaintiff getting a raise occurred less than one day before Plaintiff's immediate supervisor began to start spreading false and malicious rumors about Plaintiff McIntosh.

**Original Complaint**
**Page 5**

18. During the scope and course of Plaintiff McIntosh's employment, she was called several denigrating names by her immediate supervisor, including: "Bitch" and "Rich Bitch." Along with being accused of sexual improprieties with the laborers, Plaintiff's immediate supervisor accused Plaintiff of having sexual relations with both a client and Defendant's Area Supervisor, all of which is untrue. In addition, when Plaintiff McIntosh reported the incidents of gender discrimination, harassment, and subsequent retaliation to Defendant's Trevino, he showed Defendant's true colors by stating that: "He was embarrassed ... that he was being bothered to go over to Victoria and resolve this conflict when Plaintiff McIntosh just needed to drop her complaints." This operates as additional evidence of discrimination and retaliation by Defendant.

19. After being terminated, Plaintiff McIntosh was told by a laborer that her former immediate supervisor offered him $50.00 to say that he had sexual relations with the Plaintiff. When he refused to do so and expressed anger at being bribed, Plaintiff's former immediate supervisor (and harasser) put the money in her pocket and asked him to forget the conversation. Since Plaintiff's termination, Plaintiff's former supervisor (and harasser) has continued to tell others, including Labor Ready's clientele and laborers, that Plaintiff McIntosh was fired for having sexual relations with the laborers. This subsequent and on-going defamation has occurred within one year of this suit being filed.

20. Plaintiff McIntosh's termination ten days after reporting allegations of sexual harassment, hostile workplace, and subsequent retaliation evidences that the real reason for her termination: for making a complaint under Defendant's anti-harassment/anti-discrimination policy and/or her refusal to accept said illegal conduct in the workplace. It is alleged that the pre-textual reason offered by the Defendant for Plaintiff's termination is untrue. Importantly, other employees

**Original Complaint**
**Page 6**

have lodged discrimination, hostile workplace, and retaliation allegations with state and/or federal agencies against Plaintiff's former immediate supervisor (and harasser) prior to Plaintiff's employment, yet Defendant did nothing to prevent harm from occurring to Plaintiff McIntosh subsequently.

## COUNT ONE

21. Plaintiff incorporates and realleges Paragraphs 1 through 20 as if here quoted verbatim and set forth herein at length.

22. The above discriminatory and retaliatory pattern and practice by Defendant, its agents, and employees violates Title VII of the Civil Rights Act of 1964, as amended (gender discrimination and retaliation for filing a complaint with Defendant under its anti-discrimination policy).

23. As a direct and proximate result of said acts, Plaintiff suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits, and suffered and continues to suffer distress, humiliation, great expense, embarrassment, loss of opportunities for career advancement, and damage to her reputation. The discrimination alleged in this count directly and adversely affected Plaintiff McIntosh and continues to affect Plaintiff and an unknown number of individuals similarly situated.

## COUNT TWO

24. Plaintiff incorporates and realleges Paragraphs 1 through 23 as if here quoted verbatim and set forth herein at length.

25. The actions of Defendant, its agents, and employees constitutes defamation per se and intentional infliction of emotional distress upon Plaintiff McIntosh. Defendant knew at the time of the allegations being made, as well as after Plaintiff's termination, that on-going comments about

**Original Complaint**
**Page 7**

Plaintiff's chaste and/or her having sexual relations with the laborers (and Defendant's Area Supervisor) were false when made, and done so to ruin Plaintiff's reputation in the community. Defendant was well-aware of said conduct by its rogue supervisor in the past (and presently), yet has done nothing to prevent said conduct. Defendant, by and through its agents and/or employees, conducted itself in a manner towards Plaintiff that was so extreme and outrageous as to be beyond all bounds of common social decency. It was reasonably foreseeable that this conduct would result in the damage of Plaintiff's reputation in the community and infliction of mental and emotional distress upon Plaintiff.

26.    As a direct and proximate result of said acts, Plaintiff suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits, and suffered and continues to suffer distress, humiliation, great expense, embarrassment, loss of opportunities for career advancement, and damage to her reputation.

## COUNT THREE

27. Plaintiff repleads the foregoing factual allegations contained in Paragraphs 1 through 26 as if here quoted verbatim and set forth herein at length.

28. The actions of the Defendant, its agents, and employees constitutes negligent hiring, retention, supervision, and training of Defendant's supervisors. Defendant, as Plaintiff's employer, owed Plaintiff an absolute legal and moral duty that was breached when Plaintiff was harmed because of her supervisors' misconduct throughout Plaintiff's employment.

29. As a direct and proximate result of said acts, Plaintiff suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits, and suffered and continues to suffer distress, humiliation, great expense, embarrassment, loss of opportunities for career.

**Original Complaint**
**Page 8**

## NOTICE OF RIGHT TO SUE

30. On or about February 8, 2002, Plaintiff McIntosh received from the Equal Employment Opportunity Commission a Notice of the Right To Sue (attached hereto as Exhibit "A"). Defendant is estopped from alleging that Plaintiff failed to satisfy any condition precedent for bringing this suit.

## PRAYER

WHEREFORE, Plaintiff KIMBERLY McINTOSH respectfully prays this Court to advance this case on the docket, order a speedy trial at the earliest possible date, cause this case to be in every way expedited, and upon such trial to:

(1)     Issue a declaratory judgment that Defendant's acts, policies, practices, and procedures, complained of herein, violated Plaintiff's rights, as secured by Title VII and the Civil Rights Act of 1964 [42 U.S.C. § 2000e].

(2)     Issue a permanent injunction restraining Defendant from violating the provisions of the above-noted federal laws;

(3)     Order Defendant LABOR READY to make Plaintiff whole by ordering damages for loss of income and lost fringe benefits in the amount of at least $75,000.00 and an additional $300,000.00 on account of the willful nature of the violation, and in causing emotional distress in the past and mental anguish and emotional distress in the future;

(4)     Grant Plaintiff her costs, expert witness costs, and attorney expenses, as provided by § 706(k) of Title VII [42 U.S.C. § 2000e-6(k)];

(5)     Declare that the acts and practices complained of herein are in violation of Texas law;

(6)     Direct Defendant to pay Plaintiff additional compensatory damages and damages for her character and chaste being defamed, as well as for mental anguish and humiliation; and

**Original Complaint**
**Page 9**

(7)    Grant such other general relief that Plaintiff shows herself justly entitled.

## JURY DEMAND

31.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial.

Respectfully Submitted,

**COX & HATCHER LTD. LLP**

Chad A. Cox
Texas Bar No. 24000366
Southern District Bar No. 28258

103 South Irving Street, Suite 300
San Angelo, Texas 76903

(915) 486-2230 Telephone
(915) 486-2250 Telecopier

By:_____
Chad A. Cox

**ATTORNEY FOR PLAINTIFF
KIMBERLEY McINTOSH**

**Original Complaint
Page 10**

EEOC Form 161 (10/96)    U.S. ⌒ L EMPLOYMENT OPPORTUNITY CON ⌒ ON

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To: Kimberly McIntosh<br>c/o Chad A. Cox<br>Attorney at Law<br>Stewart, Cox & Hatcher, PC<br>103 S. Irving Street, Suite 300<br>San Angelo, TX 76903 | From: U.S. Equal Employment Opportunity Commission<br>San Antonio District Office<br>5410 Fredericksburg Road Suite 200<br>San Antonio, Texas 78229 |

*On behalf of person(s) aggrieved whose identity is*
[  ]   *CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 360-A1-0864 | Travis Hicks,  Enforcement Supervisor | (210) 281-7644 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[  ]   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[  ]   Your allegations did not involve a disability that is covered by the Americans with Disabilities Act.

[  ]   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[  ]   We cannot investigate your charge because it was not filed within the time limit required by law.

[  ]   Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[  ]   While reasonable efforts were made to locate you, we were not able to do so.

[  ]   You had 30 days to accept a reasonable settlement offer that afford full relief for the harm you alleged.

[ X]   The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

[  ]   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ . ]   Other *(briefly state)* _____

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you.  You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS** from your receipt of this Notice; otherwise, your right to sue based on this charge will be lost.  (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_____          2/4/02
Pedro Esquivel, Director                              *(Date Mailed)*

Enclosure(s)

cc:    Labor Ready

**EXHIBIT "___ A "**